Ms. Davidson, you may proceed. Good morning and may it please the court. Mr. Aguirre-Rivera asked this court to vacate his conviction because the jury returned an inherently inconsistent verdict on the charge defense. He was charged with conspiracy to possess with intent to distribute one kilogram or more of heroin. The jury was was correctly instructed that to find him guilty of that charge defense the government had to prove beyond a reasonable doubt five elements. When the jury was asked to return its verdict, a problem arose. The special verdict first asked the jury to determine whether or not he was guilty or not guilty of count one, the charge defense. The jury said guilty, but then the verdict form asked the jury to answer two special interrogatories. Those two interrogatories repeated verbatim the fourth and fifth element of the charge defense. On the second interrogatory, whether Mr. Aguirre-Rivera knew or reasonably should have foreseen whether the conspiracy involved a kilogram or more of heroin, the jury said no. So it sets up an inherent conflict in the jury verdict and the district court erred by not entering a judgment of acquittal. We can track this through logically with Eileen, which unequivocally says that crime and punishment are interlinked and when a fact enhances punishment, it becomes a new aggravated offense. Add in this court's decision in Haines and it's very clear there's no dispute, there's been no argument that the jury was incorrectly instructed, but we do know from this court's decision in Gonzalez that when a jury provides an answer to special interrogatory on an element of defense, that answer has legal effect. And that's the problem that arises probably best articulated by then Judge Gorsuch in the Shipley case. We have a metaphysical impossibility. For the jury to find generally that Mr. Aguirre-Rivera was guilty of count one, which contained five elements, it assumes the jury found beyond a reasonable doubt that the government met that fifth element. Was the instruction here was pursuant to the pattern instructions or not? Yeah, I guess there's so many little bits and pieces here, whether the penalty, so I guess quickly on the offense conduct, I would have thought, you know, obviously the argument here is that the elements of the offense are clear, it's just you do have these statutes where the penalty provision requires a mandatory minimum and therefore you need a beyond a reasonable doubt. And so this is just purely a penalty argument, right? There's an oddity, there's a tension, but we don't ask unless it completely negates the crime, as in no drugs, right? Well, to answer the first part of your question, the elements do follow the pattern instructions. There's no dispute that the jury was correctly instructed on the elements of the charge defense. What we have then, because it was an enhanced offense according to Eileen, is a new aggregated offense of which all the elements must be proved beyond a reasonable doubt. Where the verdict form departs from, say, the pattern instructions is that the special interrogatories repeat verbatim the elements, two elements of the charge defense. So it's not the case that we can say the jury convicted him of a B1C penalty offense because that's not what the jury was charged, that's not the instructions the jury was given, and that's not the answer that they gave on the jury verdict form. So we really do have a conflict when the jury says yes, guilty, it assumes the fifth element is met of the charge defense. When asked specifically whether that fifth element is met, the jury says no. So the problem is what effect do we give it? If we say yes, he's been convicted of the offense, we have to ignore, the court has to ignore, an essential element of the crime for which he was charged. If we say, oh, no. That's the foreseeable conspiracy drug amount? Yes, that he knew or could reasonably foresee that the conspiracy involved a kilogram or more of heroin. So this is a worse situation from your perspective than leontoritis or something that deals with just the enhancement part where it's not the crime itself because this is because of the way that the charge is structured with the exact elements instead of a separate enhancement question. This case definitely turns on its facts and the jury verdict form that was provided, and it's distinguishable from leontoritis because in that case, well, several reasons. One, you've got a jury verdict form in leontoritis that allows the jury to make some affirmative finding on the fifth element. And that's actually, I think, the deciding factor and the distinguishing point of this case compared to the others. There is no affirmative conviction on the charge defense in this case. In leontoritis, excuse me. Leontoritis had a conviction. He had a conviction. It was just whether or not the enhancement was contradicting what they said about when they said no to enough drugs. Could it? Yes. And so that's a different scenario than not having a conviction. If it's the exact element of the conviction, why isn't that an irreparable conflict? Thank you. I believe it is. And we've got Gonzales that teaches that. We don't have an affirmative. We cannot say without ignoring the answer on the fifth element in the special interrogatory, we cannot say that the jury affirmatively convicted Mr. Aguilar Rivera of the charge defense. What about, what do you say to someone who says, well, he was convicted of some drugs? And that's what the jury was trying to say. As the jury was instructed and how they answer and how the special interrogatories were answered, we can't make that finding. I think in a lot of the cases, Daniels is certainly a case cited by both parties in favor by the government, distinguished by us. And I think it's really important to identify that in those cases, the jury has made an affirmative finding of guilt. And then the issue on appeal is whether the sufficiency of evidence supports that jury's conviction. And then whatever the evidence was in those cases, it ferrets out a particular outcome. And there is precedent for when a jury affirmatively convicts on the offense, but the court finds sufficiency of evidence does not support that aggravated crime, then the conviction can stand if the evidence supports a lesser included offense. But the difference is that those cases start with an affirmative conviction by the jury on the charge defense. And that's the door I encourage the court to look through in this case, is that we can't determine an affirmative conviction on the charge defense. Given that we're having all these conflicts with the special interrogatories nowadays, I mean, maybe it's not all these because we only see the ones that have a problem. Should it be that they're charged on the basic offense first? I mean, the charge should say the basic offense and then have as a second question this whole, you know, the enhancement for the aggravated. I'm just wondering how you could avoid this. And did anybody think of that at the time? I don't think so. I think, I mean, you were following what the pattern, what the, just the elements, and so it wasn't, no one did anything wrong. But is there a way to avoid this going forward? Well, there's plenty of discussion about why special interrogatories are discouraged. So this would be a different case if it was just a general verdict form. The jury was instructed on the elements of the offense to convict for the charge, and there's no requirement that a special interrogatory is required. So that's one option. I think that, I think it's important to note that I was able to identify only three cases that present this particular scenario, Shipley, Randolph, and Pierce, in terms of a drug conspiracy. So it did feel like hunting for a needle in a haystack. So it's not that prevalent, just maybe I have light leontoritis on the brain, similar with the, you know, that's, okay. Kemp, could you want to address your other argument in case we were not persuaded by your first argument? Sure. It's certainly an alternative argument if the court doesn't vacate the conviction. The sentencing has errors, and both parties have identified errors, and both parties agree that some level of relief is required because of the articulation of the wrong penalty statute. Why it would be important to vacate the sentence and remand is that there's clear articulation by the court that it wasn't dropping down to a B1c level penalty. It was stuck mentally at an enhanced penalty. And even though there is a difference between statutory penalties and guideline calculations, we have a clear articulation by the court that mentally the judge was anchored to the wrong penalty. The government's response, of course, is that there are multiple points that belie that the district judge was actually under the misimpression, clearest in the statement of reasons. Well, I think that there are so many errors that we just don't know. We just don't know. The only real indication that the judge would have thought it was a B1c penalty was that he imposed a three-year term of supervised release, but in the statement of reasons, the court articulates that it was a four-year minimum. And was it in the J&C that the court confirms it wasn't a mandatory minimum? In the judgment, the offense of conviction lists B1c, excuse me, it lists B1b expressly in the judgment of conviction. So it's a muddle. And this was a Zoom sentencing and it happened pretty quickly. I don't believe it was a Zoom, but I'm not. I thought it was very quick and your client said, had a theory for why, even though he handed a DVD with three kilos in it, somehow the jury might not have said he could be found aware of that. And that was that he just, he didn't know the weight of what he was carrying. That was his argument? That was the theory of defense. In fact, the trial testimony places him in the lexicon of testimony for one minute only. It was a delivery of a DVD. So it's almost incontestable that he knew there's heroin in there. The argument is he just, as he hands it, he doesn't know how much? I disagree, Your Honor. The theory of defense is that he couldn't have known. There was no testimony that he was doing anything other than delivering a sealed DVD. If the special interrogatory five, it is what it is. The jury didn't find beyond a reasonable doubt that he knew that full amount. The district court could still have said, well, I find by a preponderance that he did. Are you talking about conviction or? I'm talking about sentence. For sentencing? Yes. If the conviction stands. Yeah. Then a court can make a preponderance finding. And would you dis- Isn't that before the Supreme Court right now? I mean, I guess they haven't decided whether to preponderance difference. If you say you didn't by reasonable doubt, then you couldn't have by preponderance. That is the Leonteritis problem. I'm not aware if they've accepted cert, but I certainly am aware that it's a- Contested issue. It's a contested issue. But that would have to be, if the district court weren't under a misimpression about mandatory minimum, that would have to be what the judge did here. I know what the jury said. Last question as your time's running out, but back on the offense invalidation theory, your argument is, despite the verdict form with the three elements, the special interrogatory number five negates which element? Five versus four or five versus two? What does their answer on five explicitly negate? Their explicit answer to number five negates number five in the general finding. But I do think you bring up an interesting point that knowledge in five may be intertwined with knowledge on two in terms of the elements of the offense. Okay. That's my interesting point, but what's your argument? Because to negate an offense, you have to show that it's invalidated one of the elements of the offense. So in your theory, as I understand it, is their answer to number five negated what? The fifth element on which the jury was charged, which is whether or not the defendant knew or reasonably could foresee. But I guess obviously the question in my head is, isn't that just a penalty enhancement element? Not for the charge defense. It is an element of the charge defense and he has a Sixth Amendment right to have a jury convict him on the charge defense. Okay. Well, wait, if I may. You're not saying that the government charged an elaborate or additional element in the indictment. Are you saying that the district court with agreement of everybody, when it constructed the verdict form, enlarged the 846 offense that would normally apply and then the government was stuck to that? No. No. No. The charge defense was conspiracy to possess with intent to distribute one kilogram or more. That's a B1A offense. And then the number four, they say yes? For the general conspiracy. But then the only thing on five they undercut is what did he foreseeably knew? And I'm still thinking that exclusively relates to penalty. And you're saying no, it doesn't because what? Because I lean. Because when an offense is charged with an enhanced penalty, it becomes a new aggregated offense for which those five elements are required. Thank you. Thank you, counsel. Thank you. You saved time for rebuttal. Good morning. May it please the court, I will not come back tomorrow. We like seeing you. We will come back. I know you will. The charge is not in dispute. I'm not sure about that. As I understand, Daniels, the offense that was charged and the offense that's defined by 841 is the offense in 846 is the offense of conspiracy to possess with intent to distribute a controlled substance. And the quantities are sentencing factors. And Judge Elrod, you point out there's some confusion about the, there seems to be, and I think you, I perceive the same confusion about the interrogatories and how they are. As I was looking at this this morning, I realized this interrogatory asked a question that isn't really the right question. It asked did the defendant know or reasonably should have known. But the issue for sentencing is foreseeability. And the question is was it foreseeable to the defendant. I mean, the interrogatory, first of all, is mistaken. There's nothing we can do about it. But I'm just saying this is kind of a confusing area. But I think that Daniels says the offense of conspiracy to possess has three elements. It's the agreed to possess with intent to distribute. The defendant joins it and he does something voluntary to make himself part of that agreement. That was the verdict form. That was the verdict. Well, the verdict form says guilty. We find the defendant guilty. And then at the top it says guilty as to count one. And then there are if you answer guilty, answer the following questions. And then those are tracking the fourth and fifth so-called elements of the court's instruction on the general verdict. There's, my point is I think there's surplusage. The statute does not define a crime whose elements are based on the drug quantity. It defines a crime and the drug quantity under 841B1A and B1B and B1C determines what the punishment is. And the Supreme Court has said that for the Sixth Amendment purposes, we have to allege the quantity and the jury has to make a finding beyond a reasonable doubt. We have to prove it beyond a reasonable doubt if those enhanced penalties are going to apply. And you asked Judge Higginson about the indictment. The indictment language has two paragraphs. The first paragraph charges a conspiracy to possess a controlled substance which involved heroin. It didn't allege quantity. What it said in the second paragraph is quantity involved. The quantity involved in conspiracy and attributable to each defendant. And that's for the punishment purposes. Ah, so that's where the word attributable, because the PSR picks up that word. That word has no legal significance either. Well, it's in the court's cases. The court talks about that in terms of the defendant for, and Haines was about statutory sentencing, but prior to that this court had applied the reasonable foreseeability to the guidelines. And what the court's language is, is the quantity either that the defendant was directly involved in, or was reasonably foreseeable to him. Right. But when the PSR just says it was the larger amounts attributable, which is quite inconsistent with Special Interrogatory 5. I agree. Okay. That word attributable wouldn't give us any insight into whether the district court even made a preponderance finding of reasonable foreseeability, unless it's sort of the functional equivalent, which is getting loose though, because it doesn't refer to scienter at all. So your question goes to what the drug court... Well, I'm mixing things up. I shouldn't. Go back to Eileen, because that's, the two-thirds of their argument was on offense invalidity. So you see this as a Daniels case. She's saying Eileen has thrown a spin on it. And I don't think that's what Eileen does, and I don't think that's what this court has done, is the 841-846 is an offense regardless of drug quantity. If there's, if he agrees to distribute heroin, but he didn't really touch any of it, he can still be guilty of that conspiracy, but that additional amount may not be attributable to him. And that's what this was really about. That's what Judge Martinez was looking at when he denied their motion for acquittal. And I go to, if the court accepts that, and I think that's the correct interpretation of the law, then it goes to Judge Higginson. What your question was is, what does that finding on that interrogatory negate? And I, I mean, Gonzales is a difficult case, because it seems to suggest it doesn't have to necessarily negate an element in order for the court to give some effect to what seems to be an inconsistent finding. But at minimum, it would negate his reasonable foreseeability as to the conspiracy amount. And yet, and yet if we accept your argument that the district court wasn't in the end misunderstanding the mandatory minimum gave the 60 months, then aren't I right, the court had to have decided, well, despite the jury, I find by preponderance this guy knew? I think that's what the court was doing. I think that's what he was doing. But it never says it. It never says anything like that whatsoever. No, but he adopts, I believe he adopts the pre-sentence report. That just says attributable. Well, it says the drug quantity finding for that, and the judge heard the trial evidence. I mean, he was there. I don't think he was just pulling that number. I mean, it was a DVD player with 3.4 kilos in it. But as a really delicate area of law, when we allow a judge, and by preponderance without evidentiary restrictions, to actually contradict what the jury found, and sentence that way, perhaps high. I mean, that's, and Leontoritis is a, your dissent is really interesting, because it turns on. It's a dissent. Well, no, but it turns, I mean, but I think you made a good point, because it turns on the phrasing of the question that was posed to the jury. Because I think that as you point out, the majority was thinking in that case in terms of, is it a burden of proof? Did the government prove beyond a reasonable doubt that it evolved at least this amount? But that wasn't the question in Leontoritis. The question was, do you find beyond a reasonable doubt that it was less than 50 grams? Well, that's a different kind of finding. And I think that, you may have a point, how do you prove it was, once the jury has made that finding, it's not more than 50 grams, I don't think then the court can come in and say, well, I find by a preponderance that it was more than that, because the jury has applied the higher standard. And the rationale has always been for the distinction between the court's not bound by the jury's drug quantity finding as, well, that was based on a beyond reasonable doubt, and the district court makes drug quantity finding based on preponderance, but the question in Leontoritis inverted it. I'm probably arguing against the government's position here at some point, but I think that question that was posed in that case creates a different problem. That's not the question here. But these questions pose a problem too, because they didn't have to ask the fourth and fifth elements. No, they didn't. And the more times you ask a jury, the more chances there are for inconsistencies, and that's in a car wreck case, that's in a criminal serious liberty case. It's the more questions you ask that are repetitive, that are slightly phrased, and the more opportunities. That's why we vacillate between general verdicts and special interrogatories. I agree, and I think Well, they did have to ask some. They did. The law is clear. You're going to have mandatory minimums triggered by amounts. But they didn't have to ask the element. That's the problem. It's the element of the crime that's there rather than just the quantity. My point is it's not an element of the offense. It is something that the courts have, and the courts have used the word very loosely in different contexts. And so it's considered, the Supreme Court, and Elaine talks about it's an element in the sense it has to be pleaded and proved, but it's not an element of 846 or 841A1. It is an element that must be proved for the statutory punishment, the enhancements to apply. I should have read the jury charge conference, but is there anything illuminating there as to why the specific wording was agreed to by the parties? I don't think so. I think that's what they put together because that's the way they've done it in El Paso, and that's what was given. And I think everybody thought that's what the evidence is going to be. I'm confident that when number five came back in the interrogatory, it was, oh my gosh, what do we do with this? Could you talk a little bit about the sentencing? I mean, we may back to the guilt, but it really was a Zoom hearing with a difficult situation where the interpreter couldn't hear what was going on, and it was a big kind of a difficult hearing technologically, certainly. And it's a very short hearing. It's a super short hearing, and it's a very difficult because there was a lot of background. The client was at the facility, and the interpreter couldn't hear, and it was a very difficult hearing. But as I understand it, the issue goes to did the district court . . . was the district court influenced by a mandatory minimum? That's one question. The second has to still be for you to prevail unless there's a harmlessness, is that he made a finding to a preponderance, even though the defendant or the counsel in this Zoom hearing says, here's why the jury verdict number five makes sense. Yeah, he handed the heroin, but he just didn't know its weight. Right. And I think that was . . . So that's two issues. Okay. So taking the second first, I think that this court's authority has established that the district court can make that finding based on a preponderance, subject to what I've said about your dissent, because that was a different question. I think this was one of those burden of proof questions, and so it was, no, the government didn't prove beyond a reasonable doubt that he had reason to know. Even if you win on everything, sometimes we modify giantes, sometimes we vacate remand to have the district court modified, right? We've done it both ways. Why wouldn't we, since there is quite a bit of uncertainty about the mandatory minimum, lo and behold, the sentence smack on the mandatory minimum, why not vacate remand so Judge Martinez can actually say, I know what the jury said, but . . . He passed away in February. He's deceased. Pardon me? He's deceased. Ah, okay. Well, successor, a judge . . . Right. I mean, it's going to go to a new judge, you know. Yes. Start all over. I mean . . . But that way we would know, oh, that's going to be difficult. Right. Because they didn't sit through the trial, and so they're going to be taking these issues the same way you . . . But we really can't tell, though. I mean, you have the burden of proving harmlessness. I do. And I think . . . And I just don't see this as a good harmlessness home run. I don't know if it's a home run, but I think that it's there because Judge Martinez said that . . . I mean, this is one of those where we've got a bunch of little mistakes in it, but I think he got it right, because based on the drug quantity that was involved in his finding, that was a high sentencing. And he made a mistake. I think he was still two levels below where it should have been, but he had a range of 97 to 128. Do you know how long the jury was out? Did they have any questions? I do not know. I don't think they're . . . I don't know of any questions. I don't . . . She would have raised them if they had questions. Probably. That fifth one is so counterfactual. Well, the fifth one, I mean, it's a surplus. What I had a . . . What I suspect is the jury did not have the written jury instructions. I don't know this, but I'm trying to understand how they come up with these two things. So when they're trying to decide if there's guilt, and this is my speculation, but I just came up with it, they weren't looking at those five elements in writing. They were saying, is he guilty or not? And they said, yes, he's guilty. Then when they look in writing and they see the kilogram or more, I suspect what they were thinking was, well, we don't know if the government really . . . Maybe this is why the law says we don't guess. But he knew. Inconsistent verdicts, juries can do it. They can come up with it. But what's it inconsistent . . . It only invalidates the offense where it negates an element of the offense. Correct. And what I'm saying is that is not an element of the offense. The first three are the elements of the offense of conspiracy. So you don't vacate the conviction. The jury general verdict found him guilty. The question that arises as to the sentence that was imposed, Judge Elrod, is I look at the record and there's indications both ways. The court gave a three-year term supervised release, and that's not the right term for . . . Both ways is not harmless beyond a reasonable death. No, but the court's expression of the reason that it gave its sentence. And it said that, assuming that any correction would still include and cover a sentence of 60 months, and that's something with which your lawyers do not agree, the court still believes a sentence of 60 months will be sufficient but not greater than required. But then he's the next sentence. I'm sorry? Well, the opposing counsel has said read the next sentence, though, saying he seems to really be inviting . . . But if I'm wrong, I'm happy to redo this. Well, he's simply saying I'm going to follow the court. But he's saying if it turns out that 60 months is not within that range, I think that what that means is, well, then he's obviously not going to give 60 months if he's not able to. But I read this to mean he thinks 60 months is the about that defendant at the time. And I think that it's very clear. If the court were to come back and say, no, you cannot give a 60-month sentence, or if he came back and said, well, mandatory minimum has to be 10 years, I think the judge would follow it. I think he's simply saying he's going to follow any ruling of the court. But his feeling is, if he has the same ranges to work with, that 60 months is within it, he would impose that 60-month sentence, which was a departure of 37 months from the guideline range that he found. And so I think that does . . . I mean, what this court looks at is, well, did the court express that it would impose the same sentence even if they were different guidelines? I think he answered. What about the fact that, if I recall correctly, he gave a reduced supervised release? Well, what I . . . I mean, it may indicate that he didn't think he was imposing a mandatory minimum sentence, because if you were imposing mandatory . . . if he thought he was bound by 60 months mandatory minimum, then the term of supervised release should have been four years. He didn't follow that. He didn't impose that. He imposed a three-year term of supervised release, which . . . And it might have just been another glitch, just like the whenever . . . every time that it was referred to of what this relevant provision was, it was the wrong one. I agree. I'm saying that you can draw the inference both ways, but I think that Judge Martinez's statement indicates that he determined . . . and he said, he said, I'm going to make a determination that the sentencing guideline range exceeds what I consider to be an acceptable sentence. What is interesting, I think, is if he had imposed a 97-month sentence and said, I think that's the appropriate sentence, based on the drug quantity finding, assuming that he could make that finding, I don't think we'd be arguing about whether or not he imposed the sentence as a part of the mandatory minimum. I mean, the thing that creates the curiosity here is he happened to go down to 60 months, which happens to be the mandatory minimum, and I don't . . . I can't say . . . And the PSR. The PSR was wrong. I mean, I don't know where they got 100 grams or more. I mean, that's just in there. But anyway, that's where it is. But I think that Judge Martinez, at the end of the day, was determining 60 months is appropriate, even though a higher guideline range is applicable under the circumstances. And I think this is one of those where I think Judge Martinez got it right. Any other questions? No. Thank you. We have your argument, and we appreciate it. Thank you. I bring a few answers. As to the jury verdict form, it was prepared by the judge, and there were no objections by the parties. When the jury was instructed as to the form, they were simply told, quote, when you go to the jury room, the first thing you should do is select a foreperson. I have prepared a verdict form for your convenience. The foreperson will write the unanimous answer of the jury in the space provided for the indictment, either guilty or not guilty. At the conclusion of your deliberations, provide a date. There was no instruction as to the sequence. Even on the form itself? Even on the form itself. And the real problem of this case is that the special interrogatories restate verbatim two elements the jury was charged to find. And Eileen's the best case that those are indeed elements. Is that correct? Yes. They maintain that it's not an element, an actual element. So that's the crux of that argument. We cite Eileen and Apprendi so often, but sometimes it's good to reread those cases because I quote, the core crime and the fact triggering the mandatory minimum sentence together constitute a new aggravated crime, each element of which must be submitted to the jury. That's on page 113. The jury was instructed that to convict on the charged crime, five elements were required. The government reiterated in its closing argument, this is record site 558, you have to find each of the elements with which you were instructed on in order to return a verdict of guilty. Each element. The problem rises in this case, and this is a fact specific case, because the special interrogatory repeats an essential element of the crime charged. And it's that inherent conflict that necessitated an acquittal, because you can't, the court entered into the province of the jury to determine conviction. And that's the problem that lies- Isn't that, you're arguing that special interrogatory five repeated element two? It literally repeats the fifth element. So the special interrogatory two, the second interrogatory, repeats verbatim the fifth element of the charged crime. Okay. You hadn't spoken, we didn't ask you about the fact that if it's just a sentencing error, then the district court cleansed it by saying, I'd get there anyway. That saving language seems to be used widely as a rubber stamp, but I don't think it should place expressed findings the court made. And the court expressly anchored its brain to a mandatory minimum of five years by overruling an objection that the mandatory minimum did not fall under B1B of 841. So I don't think the saving language, especially with all of the legal arguments that were at play, I don't think general saving language trumps express findings that the court made, especially when the court also said, but I'll revisit it if the legal issues were to be reversed. So I don't think the government meets its harmlessness standard in this case. But once again, this case turns on its particular facts. There was one crime charged. It had five elements. There's an inherent conflict on the jury form as to whether or not the government met its burden on that element of the offense. This goes to whether the jury affirmatively convicted of the charged offense, and we cannot say that it did. When you say charged, though, it wasn't in the indictment. You're not saying the government charged element five in the indictment. They did. Well, they did. It's in the indictment. Reasonably for C, conspiracy more than three? Yes. It cites the general language of the statute, and then it says for each defendant, it makes the charge that the conspiracy involved more than a kilogram of heroin, and then because there were two different defendants, it charges him. The short answer, if you look at opening and closing by the government, is it presents to the jury a defendant's charge with conspiring to possess with intent to distribute one kilogram or more of heroin. That's the charged offense. Thank you. Thank you, counsel. We have your argument, and we appreciate the excellent arguments today in this case, which are very helpful to the court on both sides. Thank you.